OPINION
{¶ 1} Defendant-appellant, Larry D. Hall, appeals from the judgments of sentence and conviction entered by the Franklin County Court of Common Pleas following a jury trial in which appellant was found guilty of assault and intimidation of a crime victim or witness.
 {¶ 2} On September 7, 2001, appellant was indicted on one count of domestic violence in case No. 01CR-5136. On February 22, 2002, in case No. 02CR-1012, appellant was indicted on one count of improperly discharging a firearm at or into a habitation, in violation of R.C.2923.161, two counts of witness intimidation, in violation of R.C. 2921.04, and one count of having a weapon while under disability, in violation of R.C. 2923.13. Three of the counts contained firearm specifications. On May 7, 2001, appellant was indicted on two counts of intimidation of a crime victim or witness, and one count of assault in case No. 02CR-2592.
 {¶ 3} On August 22, 2002, the state filed a motion for joinder of case Nos. 02CR-1012 and 02CR-2592. On September 3, 2002, appellant filed a memorandum contra the state's motion for joinder. The case was tried to a jury beginning September 23, 2002 and, prior to the presentation of evidence, the trial court granted the state's motion for joinder.
 {¶ 4} William and Beverly Slone, the alleged victims under several counts, are the parents of Lisa Slone and Christina Puckett. At trial, the state's theory of the case was that appellant, on several different occasions, terrorized members of the Slone family in an effort to prevent their testimony against him in court proceedings. Puckett is the girlfriend of appellant, and in September 2001, appellant was charged with domestic violence in an incident involving Puckett's daughter, Kelsey Slone. Beverly Slone was listed as a witness in the domestic violence trial, scheduled for February 11, 2002.
 {¶ 5} The state presented testimony indicating that, on February 10, 2002, appellant drove by the Slone residence, located on Wrexham Avenue, shouting profanities. William Slone went out on the porch and, at one point, appellant told Slone, "You old bastard, tomorrow your wife and daughter will die. I will make sure they do not show up in court against me." (Tr. 49.)
 {¶ 6} Appellant continued driving by the house that night. At one point during the evening, Slone went outside to his garage to look for a flashlight. When Slone returned from the garage, appellant was in the street behind the house, and appellant's car was parked in the road. According to Slone, appellant was "hollering he's going to do this and do that, and * * * I feared for my life." (Tr. 50.) Slone shined the flashlight on appellant, and appellant returned to his car and drove away.
 {¶ 7} Slone called the police to report the incident and then sat on his porch. Appellant subsequently returned to the Slone residence in his vehicle and stopped near the driveway. Appellant got out of his car wearing a ski mask. Slone shined the flashlight on him, and appellant stated, "You're dead." (Tr. 53.) Appellant then fired a shot from a pistol and Slone, who thought he had been hit, fell off the porch. Slone recovered his senses and ran into the house to call the police again. Appellant drove away and did not return that night.
 {¶ 8} Beverly Slone testified that, on February 10, 2002, appellant drove by their house between 10 to 15 times while she was trying to sleep. The last time appellant showed up that evening, Beverly Slone heard a gunshot. Her husband came into the house looking scared. She remained in a back bedroom with her grandson until police officers arrived. At the time, Slone was a witness in a criminal case filed against appellant.
 {¶ 9} Lisa Slone was sitting in the living room at her parent's home on February 10, 2002, when appellant drove by the house. Later, when she was in the kitchen, she heard a gunshot, prompting her to dial 911.
 {¶ 10} Columbus Police Officer Wesley Clark was dispatched to the Slone residence on Wrexham Avenue two separate times on February 10, 2002. The first time he went to the residence, he spoke with a distraught woman who gave the officer a synopsis of domestic problems occurring with her family. He was dispatched to the residence again at approximately 5:00 a.m., and took reports of a weapon having been fired at the house. No bullet holes or shell casings were discovered at the scene.
 {¶ 11} On April 24, 2002, at approximately 11:00 a.m., William Slone was driving to a local convenience store in his brother's van when a vehicle struck the side of the van. The other car then followed Slone to the store. Slone pulled into the parking lot and appellant was "squealing his tires * * * hollering and carrying on." (Tr. 90.)
 {¶ 12} Slone went into the store and called the police. At that time, appellant had left the front parking lot area. Slone eventually went out to the van, and as he began driving out of the parking lot, appellant's vehicle approached and struck the van from behind. Appellant then drove around the back of the store. Slone went back into the store and called the police again. Police officers arrived at the store and took a report.
 {¶ 13} On April 24, 2002, after her husband had left to go to the convenience store, Beverly Slone was at home watching television. Appellant drove by and parked in front of the Slone residence. Appellant exited his car and started to walk up the driveway. Slone told her daughter Lisa that appellant was approaching the house, and Lisa closed the front door. Lisa observed something in appellant's hand, and he walked over to Lisa's minivan and struck the windshield, shattering it. Appellant then went back to his car and drove away. Beverly Slone phoned the police.
 {¶ 14} On April 27, 2002, Franklin Township Police Officer Brian Allen and his partner, Officer Benjamin Damschroder, went to an apartment seeking appellant's arrest on outstanding warrants. When they arrived, an individual identifying himself as appellant's cousin told the officers that appellant was inside. The man told the officers he was afraid of appellant and requested that the officers remove appellant because he refused to leave.
 {¶ 15} The officers entered the residence and found appellant hiding in the bathroom. The officers ordered him to come out, but appellant became confrontational, refusing to comply with requests to kneel down and put his hands behind his head. The officers threatened to use pepper spray, and appellant eventually complied with their orders. Appellant was handcuffed and escorted out of the apartment. As he was leaving, appellant became verbally combative, stating to Officer Allen, "I will get you[,] * * * I'll be out in an hour and I will hunt you in an hour and kill you." (Tr. 122.) Appellant resisted getting into the police cruiser, began spitting and kicking, and struck the officer on his leg. At one point, appellant spit on Officer Allen, and appellant continued to scream, telling the officer "how he was going to kill me. He was going to take care of business before he went to jail." (Tr. 125.) The officers transported appellant to the county jail.
 {¶ 16} Christina Puckett testified on behalf of appellant. Puckett and appellant have lived together for approximately three years. According to Puckett, her father was not very truthful, and he once threatened to kill appellant.
 {¶ 17} At the close of the evidence, stipulations were read to the jury, stating that felony criminal charges had been filed against appellant on September 7, 2001, and on February 22, 2002.
 {¶ 18} The jury returned verdicts finding appellant guilty of three counts of intimidation of a witness and one count of assault of a police officer. The jury acquitted appellant of the count of improperly discharging a firearm into a habitation, as well as the firearm specifications. The weapon under disability count was tried separately to the court, and the court made a finding of not guilty. The trial court subsequently sentenced appellant by entry filed October 8, 2002.
 {¶ 19} On appeal, appellant sets forth the following two assignments of error for review:
I. The trial court erred in consolidating Appellant's separate indictments for trial, thereby depriving him of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
II. The trial court erred in overruling Appellant's motion for a mistrial and otherwise failing to correct the misconduct of Government witnesses William, Beverly, and Lisa Slone, thereby depriving Appellant of his right to a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
 {¶ 20} Under his first assignment of error, appellant asserts the trial court erred in consolidating the two separate indictments for trial. As noted under the facts, prior to trial, the prosecuting attorney requested consolidation, which the trial court granted over the defense's objection. Appellant maintains that joinder was improper under Crim.R. 8 and Crim.R. 13 because the indictments involved completely separate conduct and evidence.
 {¶ 21} Crim.R. 8(A) provides for joinder of offenses and states:
Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.
 {¶ 22} Crim.R. 13 provides that "[t]he court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information." Accordingly, "pursuant to Crim.R. 8(A) and 13, two or more offenses can be tried together if the offenses are of the same character, based on connected transactions, or are part of a course of conduct." State v. Thomas (Feb. 12, 2002), Franklin App. No. 01AP-730. Further, "[t]he law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged are of the same or similar character." Id.
 {¶ 23} In the present case, the allegations in the indictments are of the same or similar character, as both indictments include charges of witness intimidation, alleging instances of verbal and physical violence against members of the same family to prevent their testifying against appellant. Further, there was evidence to indicate that the offenses were part of appellant's common scheme to frighten the family members from testifying. Although joinder of the count involving the assault of the police officer presents a closer question, evidence of his arrest as a result of the underlying series of related acts was arguably admissible as such offenses were "connected together and part of a course of criminal conduct." State v. Collins (July 27, 1987), Butler App. No. CA 86-04-048 (trial court did not err in failing to sever count charging resisting arrest from other counts; evidence of resisting arrest was relevant to show appellant's consciousness of guilt). Thus, joinder was proper under Crim.R. 8(A).
 {¶ 24} After a trial court has joined two or more offenses, an accused may move to sever pursuant to Crim.R. 14 if he can establish prejudice to his rights. State v. Sapp, Clark App. No. 99 CA 84, 2002-Ohio-6863, citing State v. Lott (1990), 51 Ohio St.3d 160, 163. A trial court's decision denying a motion to sever will only be reversed upon a showing of abuse of discretion. Sapp, supra. In considering a criminal defendant's claim of prejudice resulting from the joinder of multiple offenses, a court must determine: "(1) whether evidence of the other crimes would be admissible even if the counts were severed; and (2) if not, whether the evidence of each crime is simple and distinct." Thomas, supra.
 {¶ 25} Regarding the issue of other acts evidence, such evidence is admissible if "(1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." State v. Lowe (1994), 69 Ohio St.3d 527,530. As noted, both indictments charged appellant with intimidation of a crime victim or witness, in violation of R.C. 2921.04(A), which states that "[n]o person shall knowingly attempt to intimidate or hinder the victim of a crime in the filing or prosecution of criminal charges or a witness involved in a criminal action or proceeding in the discharge of the duties of the witness."
 {¶ 26} In the present case, we agree with the state that evidence of other acts would have been admissible to demonstrate intent or plan on the part of appellant. See State v. Zobel (Mar. 27, 1997), Tuscarawas App. No. 96AP060051 (other acts evidence admissible to show intent, plan and/or scheme on part of defendant to prevent witness from testifying); State v. Wagner (Dec. 23, 1999), Fairfield App. No. 99CA23 (letters and telephone calls from appellant to victim, and his communications with sheriff deputies, "demonstrate a common scheme, plan, or course of criminal conduct related to appellant's motive in attempting to frighten the victim to testify against him in the prior case"); State v. Mallet (Aug. 17, 2000), Cuyahoga App. No. 76608 (other acts evidence admissible to show appellant had previously used intimidating telephone calls and fired shots at structure to achieve some perceived end of his own; pattern was repeated in crime against victim of instant case "and thus it tends to prove a plan or scheme").
 {¶ 27} Additionally, we find no abuse of discretion by the trial court because the evidence was simple and direct. As noted by the state, the offenses were separable by time and place, and the alleged conduct varied from firing a gun to driving "donuts" in a store parking lot, and smashing the window of a parked vehicle. We believe the charges involved easily distinguishable fact patterns, and that there was little possibility that the jury confused the evidence as to the different counts. Further, the state presented the evidence chronologically, calling the same witnesses more than once so the evidence as to the separate incidents could be kept distinct. Finally, we agree with the state that the jury's acquittal of appellant on the charge of improper discharge of a firearm count and the firearm specifications indicates that the jury was able to apply the evidence to the appropriate counts.
 {¶ 28} Appellant suggests on appeal that he "possibly" would have testified in one trial and not the other had the cases been severed. However, "`[a] defendant seeking severance for such reasons "must make a convincing showing that he has important testimony to give concerning one cause, and a strong need to refrain from testifying in the other" before prejudice will be found.'" State v. Massey (Nov. 28, 2000), Franklin App. No. 99AP-1355, quoting State v. Roberts (1980), 62 Ohio St.2d 170, 176. Here, appellant has not shown prejudice as he has "neglected to set forth any specific examples of the alleged exculpatory testimony he would have presented in a separate trial." United States v. Balzano (C.A. 7, 1990),916 F.2d 1273, 1283.
 {¶ 29} Based upon the foregoing, appellant's first assignment of error is without merit and is overruled.
 {¶ 30} Under his second assignment of error, appellant asserts the trial court erred in overruling his motion for mistrial and in failing to correct misconduct by three of the state's witnesses: William, Beverly, and Lisa Slone. Appellant contends that defense counsel presented the trial court with affirmative evidence that these witnesses colluded with one another during the trial regarding their testimony. Specifically, appellant argues that, following the testimony of William Slone, Christina Puckett observed Beverly Slone ask her husband whether he remembered to testify as to certain facts. Appellant maintains that the trial court erred in refusing to grant a mistrial or to take other corrective measures.
 {¶ 31} The record indicates that, on the morning of the third day of trial, defense counsel informed the trial court that Christina Puckett had brought to counsel's attention information that "the state's three civilian witnesses who have already testified in this case, Bill Slone, Beverly Slone and Lisa Slone, were conferring about their testimony." (Tr. 134.) Counsel stated that Puckett "heard Beverly Slone say to William Slone: Did you remember to tell them this, and make sure you tell them that." (Tr. 134.) Defense counsel expressed concern that, "at this point * * * I can't cross-examine them about that. They have already testified." (Tr. 135.) Defense counsel was also concerned that he would be unable to have Puckett testify as to what she heard, as it would constitute inadmissible extrinsic evidence of misconduct prohibited by Evid.R. 608(B). Defense counsel maintained that a mistrial was the only possible remedy.
 {¶ 32} In addressing defense counsel's concerns, the trial court judge stated to defense counsel, "I'm going to allow you to call any witnesses you wish to establish that conduct." (Tr. 137.) The trial court also deemed it appropriate for counsel to "ask leading questions of someone associated with the other side." (Tr. 140.) Finally, the trial court informed counsel that the court would entertain a proposed jury instruction regarding a possible violation of the separation order and the credibility of the witnesses' testimony.
 {¶ 33} The trial court then permitted defense counsel to question William Slone upon cross-examination. Slone denied that his wife had asked him whether he remembered to testify as to a certain matter, and he denied discussing anything that had happened in the courtroom. Slone further stated that, "[e]ven when we went home last night, we did not talk about what happened about * * * anybody's testimony." (Tr. 158.)
 {¶ 34} The record indicates that, outside the presence of the jury, defense counsel questioned Puckett about what she had observed and heard the previous day. Puckett stated that, after her father had testified, he came out to the lobby and "my mother looked at him and * * * she said, `Did you tell them' this, and when she went to tell him what he was supposed to tell them, she lowered her voice where I couldn't hear what he was supposed to tell." (Tr. 168.) According to Puckett, her mother then said, "`Don't forget to tell them,' and then lowered her voice to tell what he was supposed to say not to forget to tell." (Tr. 168.) Puckett acknowledged that she was prevented from hearing any responses because "[t]hey were speaking too low." (Tr. 171.)
 {¶ 35} Following the questioning of Puckett, defense counsel renewed his motion to dismiss. The trial court noted, however, that "this conversation took place the last time after the witness testified. He hasn't testified with respect to any of these matters since then, so it seems to be of little import then to say they were discussing things in their family, and it would be normal to speak to one another." (Tr. 172-173.) Accordingly, the court overruled counsel's motion. Puckett was subsequently called as a witness by the defense, but counsel did not question her about the above matter.
 {¶ 36} Evid.R. 615 mandates that a trial court order witnesses to be separated upon request by party. State v. Ritchie, Seneca App. No. 13-01-37, 2002-Ohio-2178. The purpose for such an order is so that witnesses cannot hear the testimony of other witnesses and tailor their own testimony accordingly. Id. A trial court's decision whether or not to exclude the testimony of a witness who has purportedly violated a sequestration order is reviewed for abuse of discretion. The options available to a trial court if such an order is violated include "an instruction to the jury as to how the violation may reflect on the witnesses' credibility, the striking of the witnesses' testimony, or the declaration of a mistrial." State v. Roberts (2000), 139 Ohio App.3d 757,765. However, "[m]istrials need be declared only when the ends of justice so require and a fair trial is no longer possible." Id.
 {¶ 37} In the present case, although the trial court offered various remedies to defense counsel, the court ultimately found no violation of the separation order. Upon review, we find no abuse of discretion by the trial court or prejudice. The record in this case contains "no showing as to what testimony was actually discussed" by any of the witnesses. United States v. Johnston (C.A. 10, 1978), 578 F.2d 1352,1356 (finding no abuse of discretion by trial court in not excluding testimony of witness who purportedly violated order sequestering witnesses). Further, the trial court afforded defense counsel the opportunity to cross-examine William Slone, and there was no indication that the testimony at issue was tainted. Moreover, as noted by the state, the questions purportedly asked by Beverly Slone came after William Slone's final appearance (other than being called by the court as a witness regarding the alleged violation of the separation order). Inasmuch as defense counsel was "allowed a full opportunity to cross-examine" the witness, and where the testimony elicited from William Slone did not indicate that his testimony was influenced by conversations with other witnesses, the trial court "did not err in refusing to strike the testimony" of the state's witnesses. United States v. Posada-Rios (C.A. 5, 1998), 158 F.3d 832, 872.
 {¶ 38} Appellant's second assignment of error is without merit and is overruled.
 {¶ 39} Based upon the foregoing, appellant's two assignments of error are overruled, and the judgments of the Franklin County Court of Common Pleas are hereby affirmed.
Judgments affirmed.
PETREE, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.